## ESSEX COUNTY ORPHANS COURT.

In the matter of the probate of a certain paper writing purporting to be the last will and testament of GEORGE A. OHL, SR., deceased.

### Wills—Testamentary Capacity—Evidence in Case.

The opinion affirming this case will be found on page 165 of Miscellaneous Reports.

*Messrs. Stein, Stein & Hannock,* for the caveators.

*Mr. John Trier,* for the proponent.

STICKEL, JR., J.

I have carefully read the testimony and studied the brief of counsel for the caveator and, as a result, I am of the same mind that I was at the conclusion of the hearing, namely, that the will is not the product of undue influence and that the testator was entirely capable at the time of the making of the will.

The impression I gained from hearing the evidence was the same impression I gained from reading the testimony, namely, that prior to 1919 the testator was a vigorous, virile, strong-minded, and, perhaps, stubborn individual, accustomed to directing and governing his home, perhaps even to obedience from all in his household, a man of power and of force, a business man of ability and success; an earlier edition it appeared to me of the George A. Ohl, junior, who attended at the hearings and assisted counsel in this matter. As he grew older and his children grew up and acquired interests and families of their own and his wife died and his business interests were taken over by others, he found more and more time on his hands, less and less opportunity to direct and control, perhaps saw less of his children than he

would have liked to have seen, and he began to long for companionship, for the catering and making much of, which is so dear to so many old folks who cannot help but remember the days when they were strong and powerful and in their prime, and his thoughts strayed to a new wife and a re-established home of his own. He found a woman, much younger than himself, ready to give him the companionship and the attention and the respect and perhaps the catering he wanted; he found someone who was willing to make him a home, permit him to rule and govern it and restore him in his own estimation, at least, to some of his pristine prestige. She attended him, cared for him, made him a good wife, companioned him on his trips, perhaps even allowed him to lord it over her from 1912 until 1919 or 1920, when this strong, healthy man had a stroke, which impaired his physical ability, and, perhaps, to a lessor degree, his mental vigor. He then became more dependent on his wife for physical care, and lack of control over certain parts of his body made such care a most disagreeable task.

His wife, at this time, gave herself to him unstintingly and unsparingly, and it was but natural that she should creep closer and closer into the affections and esteem of this very old man, so that when he realized that he possessed but a comparatively small amount of property, and that his children were not in need, and some of them, at least, had plenty, he determined that he would give to the companion of his later years, the woman who had made his declining life as comfortable as possible, the remainder of his worldly goods, and he caused to be executed the deed to himself and his wife for the apartment-house, and later on the will which conveyed the balance of his personal estate, a small amount, indeed, to his wife.

I do not believe any influence worked upon this man's mind except the influence resulting from the affection and care, companionship and attention of a faithful wife over a period of almost ten years, an influence which produced in his mind a feeling that she had earned the perhaps $30,000 or $35,000 represented by his apartment-house and other as-

sets. I doubt very much that the remarks (assuming they were made) which certain of the children are claimed to have made about his second wife, and which one at least is said to have admitted making, and for which she apologized, which remarks inspired the writing of the letter to Mrs. Braun, had any substantial effect upon the testator in the making of his will or altered or affected his intention to reward his wife. The family, not unnaturally, had resented his marriage so late in life to a woman so much younger, and, undoubtedly, that resentment had communicated itself to or had been felt by the testator. He was a proud man, and I imagine a stubborn man, and that feeling of resentment was in turn resented by him, and, undoubtedly, brought him closer to his second wife. The remarks about her when communicated to him kindled brightly the feeling of resentment, in all probability, and resulted in the letter that was written to Mrs. Braun, but that it changed an intention to leave his estate, or some part of it, to his children, to an intention to leave everything to his wife, I very greatly doubt. At most, I think it only fortified or justified him in his own mind in his pre-existing determination to reward his wife for her service, companionship and attention.

There is absolutely no substantial evidence that any one was excluded from seeing him, least of all his children. There is evidence that in and about the time he made the will members of his family saw him frequently; there is abundant testimony showing his dominant state of mind when he made the will, and the testimony of Mr. Hey as to the circumstances under which he made the will, in which he told him the history of his life, his trials and success, so far as it indicates a mind undominated, is fully and convincingly corroborated by the testimony of the tenants in the apartment-house, the testimony of several of the testator's friends, as well as by the testimony of Mrs. Wills, to the effect that when she called to her father's attention the letter to Mrs. Braun, above mentioned and her exclusion, and informed him that Mrs. Braun did not apologize because she had done no wrong, the father, in the presence of his wife, who it is

claimed dominated him, on repeated occasions told Mrs. Wills to tell Mrs. Braun to come over and see her father; come over and square and settle the matter, which Mrs. Braun did not do until her father was on his deathbed.

I am convinced not only of the testamentary capacity of the testator but that the present will represents the real intention of the testator, and I, therefore, admit the will to probate.